# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOFTY CONFECTIONER, | 1:09-cv-01976-BAM (HC) |
| Petitioner, | ORDER DENYING PETITIONER'S MOTION TO EXPAND THE RECORD, DENYING THE INSTANT PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY |
| v. | |
| DON MEYER, | |
| Respondent. | |
| / | [Docs. 1, 25] |

Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge. Local Rule 305(b).

## BACKGROUND

Following a jury trial in the Fresno County Superior Court, Petitioner was convicted of one count of committing a lewd act upon a child who was 14 or 15 years of age, Cal. Pen. Code § 288(c)(1), and one count of oral copulation of a person under the age of 18, Cal. Pen. Code, § 288a(b)(1). On August 3, 2007, the trial court sentenced Petitioner to two years in state prison.

On December 30, 2008, the California Court of Appeal affirmed the judgment.

On February 3, 2009, Petitioner filed a petition for review in the California Supreme Court. The petition was summarily denied on March 11, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on November 5, 2009. Respondent filed an answer to the petition on November 9, 2010, and Petitioner filed a traverse on November 30, 2010.

On August 31, 2011, Petitioner filed a motion for expansion of the record. Respondent filed an opposition on September 29, 2011.

STATEMENT OF FACTS[1]

**Factual and Procedural Background**

> On July 19, 2006, the Fresno County District Attorney filed an information, charging [Petitioner] with one count of engaging in a lewd act on a child who was 14 or 15 years old and at least 10 years younger than [Petitioner] (Pen. Code § 288, subd. (c)(1) and one count of oral copulation of a person under 18 (Pen. Code § 288a, subd. (b)(1)). The offenses were alleged to have occurred on February 12, 2004, and involved a single victim identified as "John Doe" in the information and as "J[.]" at trial. [Petitioner's] jury trial began on July 3, 2007. On July 10, 2007, the jury convicted [Petitioner] on both counts. On August 3, 2007, the trial court imposed a prison term totaling two years.

> J., who was 18 years old at the time of trial, testified that when he was 14 years old, he went to a high school basketball game with his cousin. As he was leaving the game, he ran into [Petitioner]. [Petitioner] worked as a substitute teacher at J.'s high school. J. agreed to drive over to a store with [Petitioner] to buy some sodas.

> Before they drove to the store, [Petitioner] and J. sat in [Petitioner's] car and talked about sports. [Petitioner] mentioned he was a trainer and helped the football coach train varsity players. J., a freshman football player, complained he had a charley horse. [Petitioner] responded by massaging J.'s left thigh for a couple minutes.

> After they went to the store, [Petitioner] and J. went to [Petitioner's] motel so [Petitioner] could pick up some clothes. While [Petitioner] was in the bathroom, J. rested on the bed and watched television. When [Petitioner] came out of the bathroom, he started massaging J.'s right thigh. [Petitioner] asked J. to take off his pants. J. pulled down his pants and [Petitioner] continued to massage his thigh for a couple minutes. [Petitioner] then grabbed J.'s penis through an opening in his boxer shorts and orally copulated him. After J. ejaculated, [Petitioner] went to the bathroom and wiped his face on a towel.

> [Petitioner] then drove J. back to school, where he met his cousin. That night, J. talked to the police about what happened. Officers responded to collect evidence from J., [Petitioner], and [Petitioner's] motel room.

---

[1] These facts are taken from the unpublished opinion of the Court of Appeal and presumed to be correct. 28 U.S.C. 2254 § (d)(2), (e)(1).

   Tests of a penile swab taken from J. indicated a mixture of DNA from only two contributors. Comparison with [Petitioner's] reference sample showed [Petitioner] was a possible minor contributor to the DNA mixture. A similar DNA mixture was found in a non-semen stain on J.'s boxer shorts; J. was a possible major contributor, and [Petitioner] was a possible minor contributor. Tests further revealed a semen stain in the crotch-area of J.'s boxer shorts. DNA detected in the stain was indistinguishable from J.'s reference sample. DNA detected in a semen stain on a washcloth collected from [Petitioner's] motel room was indistinguishable from [Petitioner's] reference sample.

   E.G., who was 20 years old at the time of trial, testified that he knew [Petitioner] from when he was a sophomore at J.'s high school. [Petitioner] was his substitute teacher. E.G. played a number of sports at the time, including football, baseball, and track.

   E.G. testified that once when he went to [Petitioner's] residence, [Petitioner] "massaged my leg where my muscles were probably hurting when I was playing in sports." Specifically, [Petitioner] massaged E.G.'s "thigh muscle" after he told [Petitioner] that it hurt. When asked if [Petitioner] did anything else, E.G. responded, "he didn't really like do nothing, he just massaged it to make it like probably feel better so it won't hurt no more."

   E.G. then acknowledged that [Petitioner] moved his hand further up his thigh. When [Petitioner] did this, E.G. "pushed [Petitioner's] hand away" and "told him to back off just a little bit." When asked if there was a reason he pushed [Petitioner's] hand away, E.G. stated, "No reason that I know of." On cross-examination, E.G. testified that [Petitioner] never tried "to molest [him] in a sexual fashion."

   The defense presented evidence reflecting some inconsistencies between J.'s trial account and his earlier police statements. Fresno Police Officer John Overstreet testified that J. told him that [Petitioner] massaged his legs and touched his penis over his clothing. J. also said that [Petitioner] pulled his pants down and orally copulated him, after which J. ejaculated into a towel.

(LD 4 at 2-4.)

## DISCUSSION

I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

3

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008 (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
> or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

4

to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court which adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III.     Motion To Expand The Record

Rule 7 of the Rules Governing Habeas Corpus Cases Under Section 2254, amended 2004, provides:

> (a) In General. If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.
> (b) Types of Materials. The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
> (c) Review by the Opposing Party. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Expanding the record allows the court to dispose of some petitions without the necessity of an evidentiary hearing. See e.g. Williams v. Woodford, 306 F.3d 665, 688-689 (9th Cir. 2002)

(expansion of the record is a permissible intermediate step that may avoid the necessity of an expensive and time consuming evidentiary hearing).

Petitioner seeks to expand the record to include a declaration written by Edward Gray executed on August 27, 2011. Petitioner offers the declaration to impeach Gray's trial testimony four years earlier and also submits a videotape. More specifically, Petitioner seeks to introduce Gray's declaration to contradict his trial testimony provided under oath four years earlier that, while he was a student in high school, Petitioner massaged his upper thigh to ease an injury which lead to Gray telling Petitioner to "back off." Gray declares without support that Detective Attkinson "coerced" his out-of-court statement and the prosecutor "coached" his trial testimony.

The United States Supreme Court recently limited the availability to conduct an evidentiary hearing and expand the record in Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2001). The Court held that § 2254(d)(1) "requires an examination of the state-court decision at the time it was made" on the same evidentiary record that was before the state court when it rendered its decision. Id. at 1398. "[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." Id. at 1400.

Gray's trial testimony was admitted pursuant to California law which allows admission of evidence which tends to shows a common scheme or plan; namely, that Petitioner approached young male high school athlete-students in a similar manner. Gray's testimony did not relate to the charged conduct and Petitioner's attempt to impeach Gray is unavailing. The jury was specifically instructed that Gray's testimony was admitted only to show a common scheme or plan, and could not be considered for any other purpose. Petitioner has failed to demonstrate how Gray's contradictory declaration relates to any of the claims pending in the instant petition.

Furthermore, when the state court has issued a reasoned decision on the merits, habeas corpus review is limited to the record that was before that court. Pinholster, 131 S.Ct. 1388,

6

1398. Accordingly, this Court cannot expand the record to include the 2011 declaration by Edward Gray, and Petitioner's motion should be denied.[2]

IV.    Trial Court Erred In Admitting Evidence Of Prior Acts

Petitioner contends the trial court erred by allowing the prosecution to admit evidence of "an uncharged prior act" in violation of his due process and equal protection rights.

Petitioner raised a substantially similar argument on direct review to the California Court of Appeal and California Supreme Court. The Court of Appeal issued the last reasoned decision rejected Petitioner's claim under state law stating:

> [Petitioner] contends the trial court erred in admitting E.G.'s testimony under Evidence Code section 1101, subdivision (b) as evidence of a common plan or scheme. [Petitioner] suggests the evidence was not sufficiently similar to the charged offense to establish a common plan because E.G. did not interpret [Petitioner's] acts to be sexual in nature.
>
> Evidence Code Section 1101, subdivision (a) generally prohibits "evidence of a person's character or a trait of his or her character" when it is "offered to prove his or her conduct on a specified occasion." Section 1101, subdivision (b), however, carves an exception to this rule by admitting evidence "that a person committed a crime, civil wrong, or other act when [it is] relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."
>
> "[I]n establishing a common design or plan, evidence of uncharged misconduct must demonstrate 'not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) Moreover, "the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. . . . [I]t need only exist to support the inference that the defendant employed that plan in committing the charged offense." (*Id.* at 403.)
>
> We review a court's determination to admit evidence under Evidence Code section 1101, subdivision (b) for abuse of discretion. (*People v. Carpenter* (1997) 15 Cal.4th 312, 380.)
>
> Applying the above principles here, no abuse of discretion appears. There was a remarkable degree of similarity between the prior act and the charged offense. J. and E.G. were similarly situated in that they were both student athletes

---

[2] In addition, to the extent Petitioner has failed to fully exhaust the federal nature of his claims, (explained *infra*) the evidence of a belated recantation that Petitioner seeks to introduce into the record will not assist this Court to "provide meaningful federal review of constitutional claims." Vasquez v. Hiller, 474 U.S. 254, 258, 260 (1986).

7

at the same high school in the lower grade levels (i.e., freshman and sophomore) when the acts occurred. They both knew [Petitioner] as a substitute teacher and trusted him, at least insofar as they appeared to be comfortable being alone with him. On both occasions, [Petitioner] massaged the students' thighs, ostensibly to help relieve pain caused by playing sports. Notwithstanding E.G.'s interpretation, the prior act could reasonably be viewed as having a sexual component. When [Petitioner] tried to move his hand further up E.G.'s thigh, he apparently felt uncomfortable enough to push [Petitioner's] hand away and tell him to back off. On this record, the trial court did not abuse its discretion in finding that the similarities between the prior act and the charged offense implied the existence of a plan rather than a series of spontaneous acts. In light of our conclusion that the trial court properly admitted E.G.'s testimony under Evidence Code, section 1101, subdivision (b), we also reject [Petitioner's] related claim that the trial court erred in instructing the jury that his testimony could be considered "for the limited purpose of deciding whether or not the [Petitioner] had a plan or scheme to commit the offenses alleged in this case."

(LD 4 at 4-6.)

    A.    Exhaustion State Court Remedies

Respondent initially argues that this claim is unexhausted because his arguments in state court focused on the trial court's abuse of discretion in admitting evidence under state law. The Court does not agree.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2554-55 (1991); Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must have specifically told the state court that he was raising a federal

constitutional claim. Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998). For example, if a petitioner wishes to claim that the trial court violated his due process rights "he must say so, not only in federal court but in state court." Duncan, 513 U.S. at 366, 115 S.Ct. at 888. A general appeal to a constitutional guarantee is insufficient to present the "substance" of such a federal claim to a state court. See Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276 (1982) (Exhaustion requirement not satisfied circumstance that the "due process ramifications" of an argument might be "self-evident."); Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 1074 (1996) ("a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.").

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir.2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir.1998).

If the petition is determined to be a mixed petition containing both exhausted and unexhausted claims, the petitioner must either amend the petition to delete the unexhausted claims and proceed with the remaining exhausted claims, or accept dismissal without prejudice to pursue the unexhausted claims in state court.

In Ground One on direct appeal to the California Court of Appeal and California Supreme Court, Petitioner argued, "THE COURT PREJUDICIALLY ERRED AND VIOLATED APPELLANT'S FEDERAL AND STATE DUE PROCESS RIGHTS BY ADMITTING CERTAIN EVIDENCE PURSUANT TO EVIDENCE CODE SECTION 1101, SUBDIVISION B, AND INSTRUCTING THE JURY ON COMMON PLAN OR SCHEME." (LD 1 at 12; LD 5 at 4.) Petitioner went on to argue,

> The admission of this evidence and the instruction to examine whether it revealed a common plan or scheme violated petitioner's federal due process and equal protection rights, for it denied him a fair opportunity to defend against the charged crime and made his trial fundamentally unfair. (See *Michelson v. United States* (1948) 335 U.S. 469, 475-76; *Payne v. Tennessee* (1991) 501 U.S. 808, 825; see also *People v. Falsetta* (1999) 21 Cal.4th 903, 913 ["The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to

render the defendant's trial fundamentally unfair."].)  Where introduction of evidence violates federal due process, the harm should be tested under the Chapman standard of prejudice, which requires reversal unless the court can declare a belief that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.)

(LD 1 at 14-15; LD 5 at 6-7.)  While it is true that a challenge to the admission under state law is not subject to review in habeas corpus, the Court finds Petitioner specifically alerted the state court to the fact that he was also raising a federal constitutional claim by setting forth the applicable federal standard as applied to the facts of his case.  Accordingly, the Court finds this claim was properly exhausted.

B.      Merits Of Claim

In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit found there is no clearly established Federal law that prohibits erroneous admission of evidence.  In reaching this decision, the Court stated as follows:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28 U.S.C. § 2254(d).  In a case where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable. [*Carey v. Musladin*, 549 U.S. 70, 77 (2006).]
>
> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [*see Williams v. Taylor*, 529 U.S. 362, 375 (2005),] it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." [*Carey v. Musladin*, 549 U.S. at 77.] Under the strict standards of AEDPA, we are therefore without power to issue the writ on the basis of Holley's [admission] claims.

The Supreme Court has declined to hold that evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of law." Estelle v. McGuire, 502 U.S. 62, 75, n.5 (1991) (noting that the Court "express[ed] no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").  The Court has also left open the question of whether the admission of propensity evidence violates due process. Id.  Because the Supreme Court has declined to address the issue, the Ninth Circuit has repeatedly held that a state court's rejection of a due process

violation based on the admission of prior crimes or bad acts is not an unreasonable application of clearly established federal law.  See e.g. Alberni v. McDaniel, 458 F.3d 860, 866-867 (9th Cr. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); (reaffirming Alberni); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008).

However, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 112 S.Ct. at 482; Pulley v. Harris, 465 U.S. 37, 41, 104 S.Ct. 871, 874 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation.  Id. at 920.

The appellate court properly found E.G.'s testimony was admissible and relevant to show a common plan or scheme because of the "remarkable" similarity in Petitioner's conduct with both boys.  Petitioner has failed to present clear and convincing evidence that the state court erred in this finding.  Moreover, there is no showing the admission of E.G.'s testimony had a "substantial and injurious effect on the jury's verdict" given this evidence was less inflammatory than the charged conduct and the trial court properly instructed the jurors on the limited use of such evidence.  Jurors are presumed to follow their instructions and nothing in the record implicates otherwise.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (noting that "almost invariable assumption of the law that jurors follow their instructions").  Under these circumstances, there is no showing that the admission of E.G.'s trial testimony rendered his trial so fundamentally unfair as to violate federal due process.

V.  Ineffective Assistance Of Counsel

Petitioner contends trial counsel was ineffective during closing argument by lowering the standard of proof of beyond a reasonable doubt.  More specifically, Petitioner contends his attorney "led the jury to believe that I was obligated to take the stand once the People had met a

11

certain threshold of evidence" where counsel had told him not to "take the stand," and he thereby "compelled a guilty verdict."

Petitioner presented the substance of this claim, with the exception of the assertion counsel told him not to take the stand, on direct appeal to the California Court of Appeal. Because the California Supreme Court summarily denied the claim, the appellate court's determination is the last reasoned decision in the case. Ylst v. Nunnemaker, 501 U.S. at 803.

The Court of Appeal denied the claim stating the following:

> [Petitioner] next contends defense counsel rendered ineffective assistance of counsel in closing argument. [Petitioner's] contention is based on the following statements:
>
> "My client–and I told you again, my client can sit there and say nothing. It is a denial until the People make that threshold, this burden of proof beyond a reasonable doubt that it was more likely than not to have occurred, Sam can sit there and say nothing."
>
> "The Court will tell you that the People must prove something, they mean they must prove it beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you with an abiding–an abiding, not just an itty-bitty one, but an abiding conviction that the charge is true."
>
> [Petitioner] claims that defense counsel's statements misstated the law and lowered the burden of proof (1) by telling the jury that [Petitioner's] right to remain silent ceased once the People met some "threshold"; (2) by telling the jury the People only needed to prove the crime "was more likely than not to have occurred"; and (3) by defining "proof beyond a reasonable doubt" as proof that merely leaves the jury with more than "an itty-bitty" conviction that the charge is true.
>
> In order to prevail on a claim for ineffective assistance of counsel, [Petitioner] must make two showings. First, he must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-88 (*Strickland*); *People v. Gray* (2005) 37 Cal.4th 168, 206-207.) Second, [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to the defendant. (*Strickland*, *supra*, 466 U.S. at p. 687; *People v. Kelly* (1992) 1 Cal.4th 495, 519-520.)
>
> When viewed in context with the remainder of defense counsel's summation, the complained-of statements fail to establish that [Petitioner] received ineffective assistance of counsel in closing argument. Defense counsel also positively emphasized that the prosecution had the burden of proof. Defense counsel also positively defined the reasonable doubt standard in language that was accurate and consistent with the trial court's instructions. Thus, later in closing argument, defense counsel argued:
>
> "[W]hen the Court tells you my client in a criminal case such as this is

12

>presumed to be innocent, he means it.  Because the Court's going to tell you the presumption requires the People to prove my client's guilt beyond a reasonable doubt . . . [¶] Proof beyond a reasonable doubt.  We said this at the beginning.  Proof beyond a reasonable doubt is proof that leaves you as a juror with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because all things are possible, but in deciding whether the People have proved their case beyond a reasonable doubt you must [,] impartially, that one word, impartially[,] compare and consider all the evidence that we received throughout the entire trial."
>
>In contrast, the brief excerpts cited by [Petitioner] do not appear to reflect a positive attempt by defense counsel to define the burden of proof, nor do they contain any clear misstatements of the law.  Rather, [Petitioner's] argument is based on inferences drawn from counsel's statements, which at worst, are somewhat confusing and overly colloquial.  However, in view of the record of closing argument as a whole, including defense counsel's later clarification of the reasonable doubt standard, we cannot find that defense counsel's performance fell below an objective standard of reasonableness.  Moreover, the trial court correctly instructed the jury concerning the reasonable doubt standard and the prosecutor's burden of proof.  We assume the jury followed the instructions given, and therefore conclude it was not reasonably probable the jury was misled by defense counsel's statements, even if those statements were erroneous.  Accordingly, [Petitioner] had failed to establish ineffective assistance of counsel under both prongs of the *Strickland* test.

(LD 4 at 6-7.)

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.)  In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors.  Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. at 688; Harrington v. Richter, 131 S.Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Richter, 131 S.Ct. at 787 (internal citation omitted).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

When viewed in context, defense counsel's comments during closing argument regarding the reasonable doubt standard were reasonable. Counsel properly set forth the applicable burden of proof and emphasized repeatedly that the prosecutor had to prove its case beyond a reasonable doubt. Petitioner fails to demonstrate how counsel's comments lowered the burden of proof or that he was prejudiced as a result. Accordingly, Petitioner's claim fails on the merits.

To the extent Petitioner presents a separate and distinct claim that trial counsel was ineffective for telling him "not to take the stand," this claim also fails on the merits, notwithstanding the lack of exhaustion.[3] The Supreme Court has held that the right to be heard

---

[3] A petitioner who presented a claim of ineffective assistance of counsel in state court may not add unrelated alleged instances of counsel's ineffectiveness to his claim in federal court. See Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005) (citing Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (en banc); see e.g. Pappageorge v. Sumner, 688 F.2d 1294 (9th Cir. 1982) (petitioner failed to exhaust state remedies where he failed to raise claim of

includes the right to testify in one's own behalf. Rock v. Arkansas, 483 U.S. 44, 49, 107 (1987). "Defense counsel's role is to advise the defendant whether he should take the stand, but the ultimate decision belongs to the defendant." United States v. Hoover, 293 F.3d 930, 934 (6th Cir. 2002). "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or not inform the court of his desire to do so." United States v. Pino-Noriega, 189 F.3d 1089, 1095 (9th Cir. 1999) (quoting United States v. Joelson, 7 F.3d 174, 1777 (9th Cir. 1993). Thus, if a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives his right to testify. United States v. Nohara, 3 F.3d 1239, 1244 (9th Cir. 1993).

First, Petitioner's claim is conclusory in nature as he asserts nothing more than that counsel advised him not to testify and habeas relief cannot be provided. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (ruling that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based; conclusory allegations will not suffice); Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

Second, Petitioner has not demonstrated that counsel's advise not to testify was objectively unreasonable. Indeed, the record supports counsel's advice to Petitioner. On June 29, 2007, the trial court ruled that the prosecution was allowed to introduce evidence of seven instances of Petitioner's sexual misconduct with former students while he was employed as a substitute teacher. The court limited the ruling "to no more than three such witnesses, and I will state that based on the offers of proof any one of these seven purported witnesses would be acceptable and I will leave it up to the People to submit up to three for the purposes of testimony." (RT June 29, 2007, at 5.) Given the apparent impeachment evidence that would have resulted had Petitioner taken the stand and testified, counsel acted well within his discretion in advising Petitioner to refrain from testifying. In addition, Petitioner makes no showing, nor does he assert,

---

ineffective assistance in state court). Petitioner did not challenge the assertion that his trial attorney told him not to testify in state court and this claim is therefore unexhausted. Nevertheless, this Court can deny the claim on the merits if it does not state a colorable claim under federal law. 28 U.S.C. § 2254(b)(2); Cassett, 406 F.3d at 623-624.

15

that counsel prevented him in any way from testifying. Thus, any claim by Petitioner that trial counsel rendered ineffective assistance by advising him not to take the stand is clearly without merit.

VI.     Instructional Error

Petitioner contends the instructions defining reasonable doubt and the burden of proof, CALCRIM Nos. 220 and 222, deprived him of federal due process of law by "prevent[ing] the jury from considering lack of evidence."

Petitioner raised this claim on direct appeal and the California Court of Appeal denied the claim in the last reasoned decision stating:

> Finally, [Petitioner] contends that the instructions used in this case on reasonable doubt, Judicial Council of California Criminal Jury Instructions (2007), CALCRIM No. 220 and CALCRIM No. 222, violated his constitutional rights because these instructions shifted the burden of proof and further precluded any reasonable doubts based upon a "lack of evidence." This issue has been raised and rejected numerous times, including by this Court in two separate published opinions, as [Petitioner] recognizes. (See, e.g., *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1156-1157; *People v. Flores* (2007) 153 Cal.App.4th 1088, 1092.) We are not persuaded that we need to revisit the holdings in those cases here.

(LD 4 at 8.)

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether

the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

Petitioner has failed to demonstrate the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.  The jury was instructed with CALCRIM 220 which states:

> The fact that a criminal charge has been filed against the defendant is not evidence that the charge is true.  You must not be biased against the defendant just because he has been arrested, charged with a crime, or brought to trial.
>
> A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove a defendant guilty beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise.
>
> Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.
>
> In deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial.  Unless the evidence proves the defendant guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty.

(CT 100.)

Pursuant to CALCRIM 222 the jury was instructed:

> You must decide what the facts are in the case.  You must use only the evidence that was presented in this courtroom.  "Evidence" is the sworn testimony of witnesses, the exhibits admitted into evidence, and anything else I told you to consider as evidence.
>
> Nothing that the attorneys say is evidence.  In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence.  Their questions are not evidence.  Only the witnesses' answers are evidence.  The attorneys' questions are significant only if they helped you to understand the witnesses' answers.  Do not assume that something is true just because one of the attorneys asked a question that suggested it was true.
>
> During the trial, the attorneys may have objected to questions or moved to strike answers given by the witnesses.  I ruled on the objections according to the law.  If I sustained an objection, you must ignore the question.  If the witness was

not permitted to answer, do not guess what the answer might have been or why I ruled as I did.  If I ordered testimony stricken from the record you must disregard it and must not consider that testimony for any purpose.

You must disregard anything you saw or heard when the court was not in session, even if it was done or said by one of the parties or witnesses.

The court reporter has made a record of everything that was said during the trial.  If you decide that it is necessary, you may ask that the court reporter's notes be read to you.  You must accept the court's reporter's notes as accurate.

During the trial, you were told that the People and the defense agreed, or stipulated, to certain facts.  This means that they both accept those facts.  Because there is no dispute about those facts you must accept them as true.
(CT 101.)

Here, Petitioner has failed to demonstrate the Court of Appeals determination that the instructions defining reasonable doubt was either an unreasonable application of federal law or an unreasonable determination of the facts.  The jury was specifically instructed pursuant to CALCRIM No. 220 that "[u]nless the evidence proves the defendant is guilty beyond a reasonable doubt, he is entitled to an acquittal and you must find him not guilty."  The jury was instructed that evidence consisted of any sworn testimony of witnesses and exhibits that were admitted into evidence.  CALCRIM NO. 222.  The plain language of these instructions properly conveyed to the jury that if the evidence presented was insufficient to prove an element of a crime beyond a reasonable doubt, such lack of evidence would require an acquittal.  Thus, there is no reasonable likelihood CALCRIM Nos. 220 and 222 improperly prevented the jury from considering the lack of evidence in rendering its decision of reasonable doubt.  Accordingly, habeas corpus relief is foreclosed.

ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and

3. The Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same).  In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

Dated:   **December 22, 2011**                              **/s/ Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE